UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERIC HANSEN, | ) |
| Plaintiff, | ) **REDACTED VERSION** |
| v. | ) |
| | ) Civil Action No. _____ |
| RHODE ISLAND'S ONLY 24 HOUR TRUCK & AUTO PLAZA, INC., LANTIC ENERGY, LLC a/k/a LANTIC GREEN ENERGY, BEST NEW ENGLAND, INC., and THOMAS A. GOTAUCO, | ) |
| Defendants, | ) |
| and | ) |
| HEMENWAY & BARNES, LLP, | ) |
| Party-in-Interest. | ) |

## COMPLAINT

Plaintiff Eric Hansen ("Plaintiff," "Buyer" or "Hansen"), by and through counsel, complains against Defendants Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc., Lantic Energy, LLC a/k/a Lantic Green Energy, Best New England, Inc., and Thomas A. Gotauco (collectively, "Defendants") as follows:

### INTRODUCTION

This is an action seeking both the return of a $250,000 refundable earnest money deposit, which being held despite the clear terms of both an escrow agreement and a purchase and sale contract for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ located in Rhode Island, and an award of damages relating to Defendants' breach of contract, breach of the implied covenant of

good faith and dealing, fraud, negligent misrepresentations and violations of Mass. Gen. L c. 93A.

## PARTIES

1. Plaintiff Eric Hansen is a person residing in Cape Elizabeth, Maine.

2. Defendant Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc. ("RI's Only") is a corporation organized under the laws of Rhode Island with its principal place of business located at 849 Victory Highway, West Greenwich, Rhode Island.

3. Defendant Lantic Energy, LLC a/k/a Lantic Green Energy ("Lantic Energy") is a limited liability company organized under the laws of Rhode Island with its principal place of business located at 849 Victory Highway, West Greenwich, RI.  Upon information and belief, Thomas A. Gotauco is the only member of Lantic Energy, and he is a person residing at 335 Plain Meeting House Road, West Greenwich, Rhode Island.

4. Defendant Best New England, Inc. ("Best N.E.") is a corporation organized under the laws of Rhode Island with its principal place of business located at 849 Victory Highway, West Greenwich, Rhode Island.

5. Defendant Thomas A. Gotauco ("Gotauco") is a person residing at 335 Plain Meeting House Road, West Greenwich, Rhode Island.

6. Party-in-Interest Hemenway & Barnes, LLP ("Hemenway & Barnes" or "Escrow Agent") is a limited liability partnership organized under the laws of the Commonwealth of Massachusetts with its principal place of business at 60 State Street, Boston, Massachusetts. Upon information and belief, the partners of Hemenway & Barnes also are citizens of the Commonwealth of Massachusetts.  Hemenway & Barnes is the escrow agent holding funds in

the approximate amount of $250,000, which, upon information and belief, such escrow funds are located in Boston, Massachusetts.

## JURISDICTION AND VENUE

7. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of Maine, all Defendants are either citizens of Rhode Island or citizens of Massachusetts, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) and (a)(3) because a substantial part of the property that is subject to this action is located in this judicial district and the Defendants are subject to personal jurisdiction in this district at the present time.  Furthermore, the parties agreed to personal jurisdiction and venue in this judicial district.

## FACTUAL BACKGROUND

### Sellers' Misrepresentations about the Truck Stop

9. Gotauco, through the entities RI's Only, Lantic Energy, and Best N. E. (hereinafter collectively referred to as "RI's Only" or "Seller"), is the owner and operator of  at 849 Victory Highway, West Greenwich, Rhode Island (             ).

10. Kevin M. Brill, Esq. ("Attorney Brill") is the agent and attorney for Seller and Gotauco.  At all relevant times, he has acted on behalf of both Seller and Gotauco.

11. Starting in approximately December 2009, Hansen had exploratory discussions with Gotauco about the possibility of purchasing            

3

12. In these discussions, Gotauco and/or Attorney Brill represented that █████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████

- ██████████████████████████████████████████████████████

- ██████████████████████████████████████████████████████

- ████████████████████████████████████████████████

13. Furthermore, Gotauco and/or Attorney Brill provided to Plaintiff certain financial documents, which included Sellers' tax returns for the years 2007, 2008, 2009, and other supplementary financial information ██████████ ("Pre-Agreement Financial Documents").

14. The Pre-Agreement Financial Documents showed ████████████████

████████████████████████████████████████████████████████████

████████

**The Purchase and Sale Agreement**

15. Based on the Pre-Agreement Financial Documents and the representations by Gotauco and/or Attorney Brill, Plaintiff entered into a Purchase and Sale Agreement dated October 31, 2010 (the "Agreement"), with RI's Only, as Seller, for the sale of ██████████ ██████████████████████████. A true and correct copy of the Agreement is attached hereto as Exhibit A.

16. Pursuant to Section 4 of the Agreement, Plaintiff was entitled to conduct due diligence on the Seller and the business during the forty-five days from October 31, 2010, which meant Plaintiff was entitled to perform his due diligence up to and including December 15, 2010.

4

17. Pursuant to Section 4 of the Agreement, the closing was to occur no later than three weeks after the expiration of the due diligence period – on or before January 5, 2011. Under Section 4, the parties expressly agreed that "time is of the essence of this Agreement."

18. Under the Section 3 of the Agreement, the Seller made a number of representations and warranties about



19. Under the Agreement, there were a number of conditions that were required to be satisfied before the sale of            was to be completed.  Section 12 of the Agreement, titled "Conditions of Sale," made the closing contingent on numerous conditions detailed in Subsections 12(a) through 12(h).

20. Pursuant to Section 12(a), the closing was contingent on the Buyer:





[redacted]

21. Pursuant to Section 12(b), the closing was contingent on the Buyer:

[redacted]

[redacted] Pursuant to Section 12(c) the closing was contingent on the Buyer's:

[redacted]

23. If the sale conditions were not satisfied, then the Buyer could terminate the Agreement. Specifically, the last paragraph of Section 12 provided that:

[redacted]

24. Section 20 of the Agreement required Plaintiff to provide a $250,000 "refundable deposit" to be held in escrow by Hemenway & Barnes, LLP subject to the terms of an escrow agreement "providing for refund of the deposit in the event that any or the contingencies identified in Section 12 Conditions of Sale of the Agreement are not met to the Buyer's sole satisfaction."

**The Escrow Agreement**

25.     At or around the time of the execution of the Agreement, Plaintiff provided the $250,000 refundable deposit which has been held in escrow by the party-in-interest Escrow Agent. On information and belief, such escrow funds are located in Boston, Massachusetts.

26.     On or about approximately October 31, 2010, the Seller, the Buyer, and the Escrow Agent entered into the Escrow Agreement.  A true and correct copy of the Escrow Agreement is attached hereto as Exhibit B.

27.     Paragraph 2 of the Escrow Agreement provided that if the terms and conditions of sale in accordance with Section 12 of the Agreement have not been met, the escrow monies shall be returned to Plaintiff.    Paragraph 2 further provides:

> If any of these conditions are not satisfied, then at the option of the BUYER, this Agreement may be terminated by written notice to the SELLER, whereupon, any escrow monies held under this Agreement shall be forthwith refunded to the BUYER.

28.     Paragraph 2 of the Escrow Agreement also sets forth the conditions of the sale under the Agreement, providing that "[u]pon notice that the following terms and conditions of sale in accordance with Section 12 of the Purchase and Sale Agreement dated October 31, 2010 have not been met, the Escrow monies shall be returned to the Buyer."

29.     Throughout Paragraph 2 of the Escrow Agreement, the agreement clearly and repeatedly provides that if the sale conditions are not satisfied, the escrow funds will be immediately refunded to the Buyer.  For example,



30.     This language about the deposits being "immediately refunded to the Buyer" is repeated throughout Paragraph 2 of the Escrow Agreement.  Ex. B, ¶¶ 2(A)-(E).

31.     In fact, before the parties entered into both the Agreement and Escrow Agreement, Attorney Brill sought repeatedly to require that the $250,000 escrow deposit was nonrefundable if the deal did not close.  Plaintiff refused to agree to such a provision.

32.     As a result, both the Agreement and the Escrow Agreement clearly provided that the deposited funds were to be "immediately refunded to the Buyer" if any of sale conditions "are not met <u>to the Buyer's sole satisfaction</u>."  Ex. A, Agreement, § 20 (emphasis added).

**Due Diligence**

33.     To move forward toward the possible purchase of ▇▇▇▇▇▇▇▇ Plaintiff needed both additional information about the business and needed to check out the information that he already was provided by Seller and agents of Seller, including, but not limited to, Gotauco and Attorney Brill, before the Agreement was executed.  Accordingly, the Agreement provided that:

> Buyer shall receive forty five days from the date of signing of this agreement in which to perform it [sic] due diligence.  The closing date for this Agreement and completion of transfers hereunder, shall be no later than three weeks after the expiration of the forty-five days of due diligence.  It is agreed that time is of the essence of this Agreement.

Ex. A, Agreement, § 4.

34.     After the Agreement was executed on October 31, Plaintiff immediately commenced the process of due diligence and seeking ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

8



[redacted]

35. In the e-mail dated December 2, 2010, King stated as follows:

> [redacted]

Later in the day, King informed Attorney Brill that "[t]he only thing I understand that we have received after the first package of due diligence items was the signed IRS forms."

36. In November and early December, King made repeated requests to Seller and Attorney Brill for information to complete his due diligence for Buyer and for additional financial information [redacted]

37. On December 3, 2010, King finally received a copy of the interim financial statement for the period ending August 31, 2010.

38. [redacted]

39. [redacted]

40. The interim financial statements provided showed that ████████

████████████████████████████████████████████████████████████████

████████████████████████████

41. On behalf of the Buyer, King submitted these new interim financial statements to

████████████████████████████████████████████████████████████

████████████████████████████████ **and Defendants' Refusal to Return the $250,000 Refundable Deposit**

42. On December 9, 2010, after review of the additional information, ████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████ A true and accurate copy of the e-mail dated December 9, 2010 from ████

████ is attached as Exhibit C.

43. ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ A true and correct copy of the letter dated December 15, 2010 is attached as Exhibit D.

44. Pursuant to the terms of the Agreement, by letter dated December 14, 2011, Plaintiff provided notice to Seller that ████████████████████████████████

████████████████████████████████████████████████████████████ he was

10

exercising his sole discretion under Section 12(b) and Section 12(c) of the Agreement to terminate the Agreement. A true and correct copy of the December 14, 2011 letter from Plaintiff to Seller is attached hereto as Exhibit E.

45.     Under the Agreement and the Escrow Agreement, even though Plaintiff promptly provided notice that certain sale conditions were not satisfied, the Seller and Gotauco, through their agent Attorney Brill, refused to have the Escrow Agent to "refund immediately the deposit to the Buyer."

46.     Specifically, in an e-mail dated January 10, 2011, Attorney Brill threatened the Buyer with "litigation to determine whether he's [the Buyer] entitled to the return of [the Escrow Funds]." In the alternative, Attorney Brill stated: "I am happy to discuss any suggestions with you [if you have some idea of how to solve this short of litigation]."

47.     Repeatedly, Gotauco and Seller, through their agent Attorney Brill, have been advised that under both the Agreement and Escrow Agreement, there is no legal or factual basis to refuse to allow the Escrow Agent to release the Escrowed Funds. A true and correct copy of a letter dated November 2, 2011 is attached as Exhibit F and a letter dated December 13, 2011 is attached as Exhibit G.

48.     Furthermore, in the correspondence, the Sellers, Mr. Gotauco, and Attorney Brill received numerous documents supporting the Plaintiff's position.

49.     In response, on behalf of Seller and Gotauco, Attorney Brill has refused to offer any facts, documents or law supporting the Seller's position. ████████████

████████████████████████████████████████

████████████████████████████████

50. In a telephone conversation on January 20, 2012, on behalf of Seller and Gotauco, Attorney Brill demanded that the Seller is entitled to keep $200,000 (of the $250,000 escrow deposit), but Attorney Brill refused to provide any factual or legal support for that position. In fact, the Agreement expressly provided that Plaintiff was entitled to return of the entire $250,000 escrow deposit if any of the sale conditions were not met to Plaintiff's "sole satisfaction."

## COUNT I
### (Declaratory Judgment 28 U.S.C. §§ 2201 and 2202)

51. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 50 of the Complaint as if set forth in full herein.

52. The facts alleged herein present an actual and justifiable controversy, and this Court has jurisdiction over the issues by virtue of 28 U.S.C. §§ 2201 and 2202.

53. Plaintiff had the right, and executed such right in December 2010, to terminate the Agreement and have his $250,000.00 refundable deposit immediately returned to him.

54. Defendants, through Attorney Brill, have refused, and continue to refuse, to agree to refund the $250,000.00 refundable deposit to Plaintiff.

55. Plaintiff seeks a determination and declaration of his rights under both the Agreement and the Escrow Agreement for the return of the $250,000.00 refundable deposit.

56. Plaintiff seeks a court order that the $250,000.00 deposit be returned to him.

## COUNT II
### (Breach of Contract)

57. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 56 of the Complaint as if set forth in full herein.

58. There are agreements between Buyer and Seller, including the Agreement and the Escrow Agreement.

59. The Seller has breached these agreements in numerous ways, including:



b) Failing to recognize that certain sale conditions set forth in Section 12 of the Agreement were not satisfied to the Buyer's sole satisfaction; c) Refusing to allow the Escrow Agent to return the Escrowed Funds to Buyer; d) Failing to recognize Buyer's proper termination of the Agreement pursuant to its terms.

60. As a result of Seller's breaches of the Agreement and the Escrow Agreement, Plaintiff has suffered and continues to suffer damages, including, but not limited to, the return of the Escrowed Funds, attorney fees and expenses, and all other costs incurred with respect to Seller's breaches of the Agreement and Escrow Agreement.

## COUNT III
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

61. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 60 of the Complaint as if set forth in full herein.

62. The Seller breached the implied covenant of good faith and fair dealing that was a part of its contracts with Plaintiff.

63. As a result of Seller's breaches of the Agreement and the Escrow Agreement, Plaintiff has suffered and continues to suffer damages, including, but not limited to, the return of the Escrowed Funds, attorney fees and expenses, due diligence costs and expenses, and all other costs incurred with respect to the transaction.

### COUNT IV
### (Fraud)

64. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 50 of the Complaint as if set forth in full herein.

65. The Seller and Gotauco, through himself and Attorney Brill, knowingly made false representations about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ At the time of these representations, Defendants knew or should have known that these representations were false.

66. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was material for Plaintiff's decision to enter into the Agreement and invest time and money on due diligence.

67. Defendants made these false representations to induce Plaintiff to enter into the Agreement and pay a $250,000 deposit to the Escrow Agent.

68. Plaintiff, in fact, did rely on these representations to enter into the Agreement and pay the $250,000.00 refundable deposit to the Escrow Agent.

69. As a result, Plaintiff has suffered and continues to suffer damages.

### COUNT V
### (Negligent Misrepresentation)

70. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 50 of the Complaint as if set forth in full herein.

14

71. Defendants supplied ███████████████████████████████

███████████████████████████████████████████████████████

72. Plaintiff justifiably relied on ██████████████████████████

73. Defendants failed to exercise reasonable care or competence in obtaining or communicating ████████████████ relied upon by Plaintiff.

74. As a result, Plaintiff has suffered damages and continues to suffer damages, which include the following: monetary loss from entering into the Agreement, including, but not limited to, loss of the use of the $250,000.00 refundable deposit for over a year, and the expenditure of attorney's fees and costs associated with his due diligence and the recovery of the deposit wrongfully retained by Defendants.

## COUNT VI
### (Violations of G. L. c. 93A, § 11)

75. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 50, 64 through 69 of the Complaint as if set forth in full herein.

76. Plaintiff and Defendants are persons engaged in trade or commerce, as that term is used in G. L. c. 93A.

77. Defendants' conduct, ████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████ constitutes unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of Mass. Gen. L. c. 93A, § 11. The statements of Defendants, including those through their agent Attorney Brill, regarding ████████████████████████████ were knowing and willful and made with the

intent that Plaintiff would rely on them to enter into the Agreement, including the payment of the $250,000.00 refundable deposit to the Escrow Agent.

78. The $250,000 refundable deposit is located in Massachusetts and Defendants' unfair or deceptive acts or practices, through their agent Attorney Brill, occurred substantially in Massachusetts.

79. The unfair or deceptive acts or practices of Defendants were willfully or knowing undertaken to harm Plaintiff.

80. The aforesaid conduct of Defendants has damaged, in the loss of money or property, and is damaging Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Eric Hansen prays that this Court:

a) Enter a declaratory judgment against Defendants Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc., Lantic Energy, LLC a/k/a Lantic Green Energy, Best New England, Inc., and Thomas Gotauco that the sale conditions of the Agreement were not satisfied to Plaintiff's sole satisfaction;

b) Enter a declaratory judgment against Defendants Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc., Lantic Energy, LLC a/k/a Lantic Green Energy, Best New England Inc., and Thomas Gotauco that Plaintiff is entitled to a refund of all the escrowed funds under the terms of the Agreement and the Escrow Agreement.

c) Enter an order that the Escrow Agent, Hemenway & Barnes, LLP, release the $250,000.00 refundable deposit to Plaintiff Eric Hansen, free and clear of any claims of Defendants;

d) Enter judgment for Plaintiff and against Defendants, jointly and severally, and

award Plaintiff his damages, which are to be trebled in light of the willful nature of Defendants' conduct;

      e)      Award Plaintiff his reasonable attorney's fees, costs and expenses; and

      f)      Grant such other and further relief as this Court deems just and appropriate.

## PLAINITFF DEMANDS TRIAL BY JURY

      ERIC HANSEN,

      By his attorneys,

Dated: March 14, 2012       /s/ Seth W. Brewster_____
      Seth W. Brewster, BBO No. 551248

      /s/ Keith E. Glidden_____
      Keith E. Glidden, BBO No. 661142
      Attorneys for Plaintiff
      VERRILL DANA, LLP
      One Boston Place, Suite 2330
      Boston, Massachusetts 02108
      (617) 309-2600
      sbrewster@verrilldana.com
      kglidden@verrilldana.com