**United States District Court**
**District of Massachusetts**

```
_____  )
                             )
ERIC HANSEN,                 )
         Plaintiff,          )
                             )
         v.                  )    Civil Case No.
                             )    12-10477-NMG
RHODE ISLAND'S ONLY 24 HOUR  )
TRUCK & AUTO PLAZA, INC., BEST )
NEW ENGLAND, INC., THOMAS A. )
GOTAUCO, LANTIC ENERGY, LLC  )
         Defendants.         )
_____  )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This action arises out of an alleged breach of a purchase and sale agreement with respect to a truck stop. Plaintiff Eric Hansen ("Hansen"), the prospective buyer, brings suit against Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc., Best New England, Inc., Thomas A. Gotauco and Lantic Energy, LLC a/k/a Lantic Green Energy (collectively, "defendants"), the prospective sellers. Currently before the Court is plaintiff's motion for judgment on the pleadings with respect to Counts I and II, which defendants have opposed.

## I.   Factual Background

Plaintiff and defendants entered into a purchase and sale agreement ("the P&S") for the sale of a truck stop in West

-1-

Greenwich, Rhode Island.  The P&S entitled plaintiff 45 days to conduct due diligence with closing to occur no later than three weeks after that.  The P&S also required plaintiff to make a $250,000 refundable deposit to be held in escrow by defendants' attorneys, Hemenway & Barnes, LLP.

Under the P&S several conditions were to be satisfied prior to closing, two of which are at issue in this case. First, under Section 12(b), if plaintiff was unable to obtain financing for 40 percent (or $3,600,000) of the $9,000,000 sale price "from a conventional bank at such rates upon such terms and conditions as the Buyer shall deem acceptable," he would be entitled to terminate the P&S and obtain an immediate refund of his deposit upon written notice to the defendants. Second, under Section 12(c) if, in his "sole discretion", plaintiff "determine[d] that any environmental hazard exists" he would also be entitled to terminate the P&S and have the entire deposit returned. Under Section 20 of the P&S if any of the conditions of sale were "not met to the Buyer's sole satisfaction," the deposit was to be refunded.  If, however, all enumerated conditions were met and plaintiff did not purchase the truck stop, defendants were entitled to keep the deposit as liquidated damages.

The parties also entered into an escrow agreement ("the Escrow Agreement") which similarly provided that the deposit would be "immediately returned" if any of the conditions in the

P&S were not met.  Although the Escrow Agreement was made subject to the terms of the P&S, it did not explicitly give plaintiff "sole discretion" to determine if environmental hazards existed but instead called for "environmental reports satisfactory to the Buyer."

Following execution of the P&S and Escrow Agreements, plaintiff's business consultant Kevin King ("King") visited the truck stop to conduct due diligence.  His visit raised concerns that cash income was not being reported to tax authorities and that there were potential environmental hazards on the site.

King also began exploring financing options. He engaged in preliminary discussions with Key Bank and TD Bank and filed a loan application with Bank of America.  In late November, 2010, King requested additional financial information about the truck stop from defendants.  The following month King received an interim financial statement which he forwarded to a Bank of America loan officer.  King believed the statement showed that prior financial statements provided by defendants were not accurate and that the truck stop did not have the necessary cash flow to finance a bank loan.  On December 9, 2010, King received a letter from the loan officer advising him to

> request an extension of [his] due diligence period
> since the presentation of financial information, as it
> stands today, presents a financial profile that is not
> strong enough to secure bank financing.

Plaintiff did not request additional time.

-3-

On December 14, 2010, plaintiff sent a letter to defendants advising them that he was unable to secure financing and that

> the recent spill and several containers of apparently environmentally hazardous materials existing on the site constitute environmental hazards.

Plaintiff explained that he was therefore terminating the P&S and requested the return of his deposit under the terms of the P&S and Escrow Agreements.  The following day, Bank of America officially denied plaintiff's loan application.

Defendants have refused to release the escrow funds on the grounds that plaintiff terminated the P&S in bad faith.

## II.  Procedural History

Plaintiff filed his Complaint in March, 2012. He seeks a declaratory judgment that he is entitled to the return of the $250,000 refundable earnest-money deposit (Count I) and brings claims for breach of contract (Count II), breach of the covenant of good faith and fair dealing (Count III), fraud (Count IV), negligent misrepresentation (Count V) and violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A (Count VI). Defendants' answer denies all material allegations and asserts that plaintiff violated the covenant of good faith and fair dealing by exploiting his discretionary rights under the P&S as a pretext to terminate.

Plaintiff has moved for judgment on the pleadings which defendants have opposed.  The Court heard oral argument on the

motion at a scheduling conference and took the motion under
advisement.

III. **Analysis**

    A.    **Legal Standard**

While it differs from a Rule 12(b)(6) motion to dismiss in
that it is filed after the close of pleadings and "implicates the
pleadings as a whole," a Rule 12(c) motion for judgment on the
pleadings is governed by the same standard. Perez-Acevedo v.
Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008).  To survive a
motion for judgment on the pleadings, a complaint must contain
sufficient factual matter to state a claim for relief that is
actionable as a matter of law and "plausible on its face."
Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell
Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Assessing
plausibility is a "context-specific task that requires the
reviewing court to draw on its judicial experience and common
sense" to determine whether the well-pled facts alleged in the
complaint are sufficient to "permit the court to infer more than
the mere possibility of misconduct." Iqbal, 129 S. Ct. at 1950.
In considering the merits of a motion to dismiss, the Court
accepts all factual allegations in the complaint as true and
draws all reasonable inferences in favor of the non-moving party.
Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).

### B.    Application

In support of his motion, plaintiff asserts that 1) he had absolute discretion to terminate the contract if he was unable to obtain the necessary financing or determined that the property contained environmental hazards and 2) even if he did not have absolute discretion, he acted in good faith in terminating the P&S. Defendants argue that plaintiff's discretion was circumscribed by the duty of good faith and fair dealing and that the plaintiff did not act in good faith when he terminated the P&S.   Plaintiff responds that defendants' allegation of bad faith fails to comport with the pleading requirements of Fed.R.Civ.P. 8 and 9(c), and, as such, he is entitled to judgment on the pleadings.

The Court first considers whether defendants' affirmative defense was properly pled and then addresses plaintiff's discretion and his covenant of good faith and fair dealing.

### 1.    Affirmative Defenses Under the <u>Twombly</u> Pleading Standard

In their Answer defendants "deny that plaintiff acted in good faith in undertaking his duties under the Agreement, <u>inter alia</u>, to seek financing."   Plaintiff claims that this denial is legally insufficient under Fed. R. Civ. P. 9(c) because the requirement to act in good faith is a condition precedent and defendants were therefore required to plead with particularity. The Court is not persuaded by plaintiff's argument.   The duty of

-6-

good faith is not a condition precedent and is therefore not subject to Rule 9(c).

Plaintiff also argues that defendants did not plead their good faith affirmative defense with sufficient specificity to satisfy the heightened pleading standard of Fed. R. Civ. P. 8 as interpreted by the Supreme Court in Twombly and Iqbal. Twombly, 550 U.S. 554; Iqbal, 556 U.S. 662.  No Circuit Court of Appeals has addressed whether the plausibility pleading standard of Twombly and Iqbal applies to affirmative defenses. District Courts are divided on this question. Falley v. Friends Univ., 787 F. Supp. 2d 1255, 1256-57 (D. Kan. 2011) (collecting cases). Although a majority of early cases applied the heightened standard, this is now the minority approach.

In Kaufmann v. Prudential Ins. Co. of Am., CIV.A. No. 09-10239-RGS, 2009 WL 2449872, at *1 (D. Mass. Aug. 6, 2009)(Stearns, J.) another Session of this Court "Assum[ed], without deciding . . . that a defendant has the same Rule 8 obligations with respect to notice pleading as does a plaintiff." However, the Court also ruled that listing one of the "general" defenses named in Rule 8(c)(1) provides "sufficient notice to a plaintiff of its basic thrust" and is not subject to the heightened standard.  Although defendant's affirmative defense is not a listed defense, this Court nonetheless declines to apply the heightened standard.

-7-

Courts that have applied the heightened standard have justified their decision based on the text of Fed. R. Civ. P. 8. E.g. Hayne v. Green Ford Sales, Inc., 263 F.R.D. 647, 650 (D. Kan. 2009).  Both 8(a) (governing answers) and 8(b) (governing defenses) require a "short and plain" description of the claim. As such, many district courts have determined that the same standard should govern the requisite factual content in a "short and plain" statement. E.g., HCRI TRS Acquirer, LLC v. Iwer, 708 F. Supp. 2d 687, 691 (N.D. Oh. 2010); Hayne, 263 F.R.D. at 650. Those courts also reason that Rule 8(c)(governing affirmative defenses) simply poses additional requirements to those already set out by Rule 8(b)'s "short and plain" language and thus affirmative defenses should not be examined under a different standard. Hayne, 263 F.R.D. at 650.

The most prevalent argument made by district courts against the heightened standard, however, relies on the text of Rule 8 and is more convincing to this Court.  Despite the identical "short and plain" language, there are key textual differences between the sub-parts of Rule 8. Palmer v. Oakland Farms, Inc., No. 5:10CV00029, 2010 WL 2605179, at *5 (W.D. Va. Jun. 24, 2010). Rule 8(a) requires that the pleading "show[ ] that the pleader is entitled to relief."  Subsections 8(b) and (c), on the other hand, require only that a defendant "state" her defense. Further, Twombly and Iqbal were decided under Rule 8(a)(2) and the Court

is therefore hesitant to extend the holding of those cases to Rule 8(c) given that the drafters used different language in the sub-sections. See Charleswell v. Chase Manhattan Bank, N.A., CIV.A. No. 01-119, 2009 WL 4981730, at *4 (D.V.I. Dec. 8, 2009).

In addition, policy concerns and fairness considerations counsel against application of the heightened standard.  Courts that have applied the heightened pleading standard to affirmative defenses have often done so on the basis that Twombly aimed to eliminate the high costs of discovery associated with boilerplate claims and that boilerplate affirmative defenses have the same detrimental effect on the cost of litigation. E.g., Palmer, 2010 WL 2605179, at *5; HCRI TRS Acquirer, LLC v. Iwer, 708 F. Supp. 2d 687, 691 (N.D. Ohio 2010); Shinew v. Wszola, CIV.A.08-14256, 2009 WL 1076279, at *4 (E.D. Mich. Apr. 21, 2009).  However, the concerns voiced in Iqbal that high discovery costs will induce undeserved settlements do not apply in the context of affirmative defenses. See Leon v. Jacobson Transp. Co., No. 10 C 4939, 2010 WL 4810600, at *1 (N.D. Ill. Nov. 19, 2010) ("The [Supreme] Court. . . has never once lost sleep worrying about defendants filing nuisance affirmative defenses.")  Discovery on affirmative defenses will add little additional cost and will be borne equally by both parties because the claim and affirmative defense involve discovery of many of the same facts.

Any potential efficiency gained by applying <u>Twombly</u> does not outweigh the burden on defendants. While plaintiffs have the statute of limitations period to prepare their complaints and to find supporting facts, defendants have only 21 days to respond. <u>Leon</u>, 2010 WL 4810600, at *1; <u>Holdbrook</u> v. <u>SAIA Motor Freight Line, LLC</u>, 09-CV-02870-LTB-BNB, 2010 WL 865380, at *2 (D. Colo. Mar. 8, 2010).  As a result,

> it would be unreasonable to expect defendants to be aware of all the necessary facts or even to know for sure whether a particular affirmative defense is applicable, given that discovery has not occurred.

<u>Baum</u> v. <u>Faith Techs., Inc.</u>, 10-CV-0144-CVE-TLW, 2010 WL 2365451, at *3 (N.D.Okl. June 9, 2010).  For the foregoing reasons, the Court declines to apply the heightened pleading standard to defendants' affirmative defense of bad faith.

### 2. Plaintiff's Discretionary Right to Terminate the Contract

Plaintiff asserts that the P&S gave him absolute discretion to determine that the sale conditions had not been met because it provided for the return of the deposit in the event that any conditions were "not met to [his] sole satisfaction."  Defendants maintain that plaintiff used his "sole discretion" as a pretext to terminate the agreement in violation of his obligation to act in good faith.  Plaintiff responds that requiring him to exercise his discretionary rights in good faith changes the substantive terms of the contract.

While the contract language does indeed give plaintiff substantial discretion,

> [c]eding discretion in a contract is not tantamount to subjecting oneself to legalized tyranny. Every contract contains an implied covenant of good faith and fair dealing. Consequently, not even the reservation of absolute discretion can clear the way for a totally arbitrary and unprincipled exercise of a contracting party's power.

Okmyansky v. Herbalife Int'l. of Am., Inc., 415 F.3d 154, 158 n.3 (1st Cir. 2005) (internal citation omitted).  While plaintiff had substantial discretion under the terms of the P&S to determine whether the sale contingencies were met, his discretion was not absolute.  He was still obligated to exercise his discretionary rights under the contract in good faith.

Plaintiff contends that, even if he lacked absolute discretion, his Complaint contains adequate evidence that his decision to terminate was made in good faith.  Looking at the facts in the light most favorable to the defendants and drawing all reasonable inferences in their favor, it is not certain that plaintiff terminated the P&S in good faith.  He submitted a loan application to only one bank.  After that bank received the interim financial statements and raised concerns that there was insufficient cash flow, the loan officer recommended the plaintiff request an extension of the due diligence period.  He failed to do so.  Instead, the day before his loan application

was actually denied he notified defendants that he was
terminating the P&S.

Drawing all reasonable inferences in favor of the
defendants, the facts do not conclusively establish that
plaintiff is entitled to judgment at this stage of the case.
First, it is unclear whether plaintiff made an adequate attempt
to gain financing as required under the contract. Even in the
absence of an express requirement to do so, "reasonable efforts
must be made by the plaintiff before his right of cancellation
[under a condition to obtain financing] arises." Stabile v.
McCarthy, 145 N.E.2d 821, 824 (Mass. 1957).  For example, it is
not clear whether it would have been futile for plaintiff to seek
financing from another bank.  Nor is it apparent whether
extending the due diligence period as suggested by the loan
officer at Bank of America would have allowed for the discovery
of additional financial data that might ultimately have led to
the approval of the loan application.  As a result, additional
information is needed to determine whether plaintiff 1) acted
based on a good faith belief that he was unable to secure
financing or 2) used the implication that he would be rejected by
Bank of America as a pretext to terminate the P&S.

Furthermore, viewing the facts in the light most favorable
to the defendants, it is uncertain whether plaintiff acted in
good faith in seeking to terminate the P&S for the presence of

environmental hazards.  While the Escrow Agreement called for "completion of environmental reports" to determine if environmental hazards existed, the pleadings do not show whether such reports were ever completed.  Plaintiff's consultant visited the truck stop once but the Complaint does not specify the kind of environmental hazard he encountered.  Further, the plaintiff's letter to defendants explaining his reasons for termination of the P&S identified only the "recent spill" and "containers of apparently environmentally hazardous materials."  On those facts alone, it is not certain that plaintiff acted in good faith in terminating the P&S based on the presence of environmental hazards.

Because the resolution of these issues requires further fact finding to determine whether plaintiff acted in good faith in exercising his discretionary rights under the contract, the motion for judgment on the pleadings will be denied.

### ORDER

In accordance with the foregoing, plaintiff's motion for judgment on the pleadings (Docket No. 16) is **DENIED.**

**So ordered.**

          /s/Nathaniel M. Gorton
          Nathaniel M. Gorton
          United States District Judge
Dated October 9, 2012

-13-